IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

C.A. NO. 04-10100

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | D.C. CR. NO. 02-00062-ACK |
| | ) | (D. Hawaii) |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS M. SCHNEPPER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

BRIEF OF THE PLAINTIFF-APPELLEE
UNITED STATES OF AMERICA

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

LAWRENCE L. TONG
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
P.O. Box 50183
Honolulu, Hawaii  96850
Telephone: (808) 541-2850

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

**Page**

I.   JURISDICTION, TIMELINESS OF APPEAL AND BAIL STATUS . . . . 1

II.  ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . 1

III. STATEMENT OF CASE  . . . . . . . . . . . . . . . . . . . 2

    A.   Nature of Case and Proceedings Below  . . . . . . . . 2

    B.   Factual Summary . . . . . . . . . . . . . . . . . . . 3

IV.  SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . 16

V.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 17

    A.   There Was Sufficient Evidence Supporting
         The Convictions . . . . . . . . . . . . . . . . . . . 17

        i.   Standard of Review . . . . . . . . . . . . . . 17

        ii.  The Evidence Was Not Only Sufficient,
            But Overwhelming . . . . . . . . . . . . . . . 17

            a.   The Attempted Enticement Conviction . . . 17

            b.   The Obscenity Convictions . . . . . . . . 20

    B.   Defendant Was Not Entrapped As A Matter Of Law  . . 22

        i.   Standard of Review.  . . . . . . . . . . . . . 22

        i.   Defendant Was Predisposed To Have Sex With
            A Minor, And To Distribute Obscene Images. . . 23

    C.   Exhibit 8, A Sexually Explicit Photograph,
         Was Properly Used And Admitted At Trial . . . . . . 24

        i.   The Court Did Not Abuse Its Discretion
            In Admitting The Photograph  . . . . . . . . 25

            a.   Standard of Review. . . . . . . . . . . . 25

            b.   The Photograph Was Direct Evidence Of
               Defendant's Enticement, And Was Not
               Unduly Prejudicial. . . . . . . . . . . . 25

i

## TABLE OF CONTENTS
(Continued)

**PAGE**

ii.  It Was Not Prosecutorial Misconduct To
     Use The Photograph . . . . . . . . . . . . . . .  28

     a.   Standard of Review. . . . . . . . . . . .  28

     b.   The Prosecutor Did Not Make Improper
          Use Of The Photograph . . . . . . . . . .  28

D.  The District Court's Sentencing Determinations
    Did Not Constitute Plain Error Requiring A
    Remand  . . . . . . . . . . . . . . . . . . . . . . .  33

    i.   Introduction . . . . . . . . . . . . . . . . .  33

    ii.  Standards of Review  . . . . . . . . . . . .  36

    iii. The District Court's Sentencing Guideline
         Determinations Were Not Factually Or
         Legally Erroneous. . . . . . . . . . . . . .  37

         a.   The Application Of The Sentencing
              Guideline For Sexual Abuse Of A
              Minor . . . . . . . . . . . . . . . . .  37

         b.   The Enhancement For Use Of A
              Computer  . . . . . . . . . . . . . . .  41

         c.   The Obstruction Of Justice
              Enhancement . . . . . . . . . . . . . .  42

         d.   The Denial Of A Reduction  For
              Acceptance Of Responsibility.  . . . .  43

         e.   The Determination Of Defendant's
              Criminal History Category . . . . . . .  44

              a)   The Utah DUI conviction  . . . . .  45

              b)   The Wyoming stalking conviction . .  46

## TABLE OF CONTENTS
(Continued)

**PAGE**

   c)   Defendant Cannot Show That The
Court Would Have Sentenced Him To
A Lesser Term Had It Known That
The Guidelines Were Advisory
Rather Than Mandatory. . . . . . . . 53

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 58

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

STATEMENT OF RELATED CASES

CERTIFICATE OF SERVICE

iii

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

Blakely v. Washington,
__ U.S. __, 124 S.Ct. 2531 (2004) . . . . . . . 33, 34, 39

Jackson v. Virginia, 44 U.S. 307, 319 (1979) . . . . . . . . 17

Johnson v. United States,
520 U.S. 461 (1997) . . . . . . . . . . . . . . . 37, 53

Maine v. Taylor,
477 U.S. 131 (1986) . . . . . . . . . . . . . . . . . 37

Miller v. California,
413 U.S. 15 (1973) . . . . . . . . . . . . . . . . . . 20

Parke v. Raley,
506 U.S. 20 (1992) . . . . . . . . . . . . . . . . . . 46

Rogers v. Raymark Industries, Inc.,
922 F.2d 1426 (9th Cir. 1991) . . . . . . . . . . . . 25

United States v. Ameline,
__ F.3d __, 2005 WL 350811
(9th Cir. Feb. 9, 2005) . . . . . . . . . . . . . 35, 36,
                                                      57
United States v. Ameline,
376 F.3d 967 (9th Cir. 2004), superseded,
__ F.3d __, 2005 WL 350811 (Feb. 9, 2005) . . . . . 33, 34

United States v. Ancheta,
38 F.3d 1114 (9th Cir. 1994) . . . . . . . . . . . 42, 43

United States v. Angle,
234 F.3d 326 (7th Cir. 2000), cert. denied,
533 U.S. 932 (2001) . . . . . . . . . . . . . . . . . 18

United States v. Bagnariol,
665 F.2d 877 (9th Cir. 1981), cert. denied,
456 U.S. 962 (1982) . . . . . . . . . . . . . . . . . 30

United States v. Becerra,
992 F.2d 960 (9th Cir. 1993) . . . . . . . . . . . . 23

**TABLE OF AUTHORITIES**
(Continued)

**PAGE(S)**

**CASES:**

United States v. Benavidez-Benavidez,
217 F.3d 720 (9th Cir.), cert. denied,
531 U.S. 903 (2000) . . . . . . . . . . . . . . . . . . 25

United States v. Bilderbeck,
163 F.3d 971 (6th Cir.), cert. denied,
528 U.S. 844 (1999) . . . . . . . . . . . . . . . . . . 30

United States v. Booker,
__ U.S. __, 125 S.Ct. 738 (Jan. 12, 2005) . . . . . *passim*

United States v. Boyd,
610 F.2d 521 (8th Cir. 1979), cert. denied,
444 U.S. 1089 (1980) . . . . . . . . . . . . . . . . . 27

United States v. Bruce,
396 F.3d 697 (6th Cir. 2005) . . . . . . . . . . . . . . 56

United States v. Canada,
110 F.3d 260 (5th Cir.), cert. denied,
522 U.S. 875(1997) . . . . . . . . . . . . . . . . . . 26

United States v. Christophe,
833 F.2d 1296 (9th Cir. 1987) . . . . . . . . . . . . . 28

United States v. Cross,
308 F.3d 308 (3d Cir. 2002) . . . . . . . . . . . . . . 31

United States v. Crow,
164 F.3d 229 (5th Cir.), cert. denied,
526 U.S. 1160 (1999) . . . . . . . . . . . . . . . . . 30

United States v. Davis,
36 F.3d 1424 (9th Cir. 1994), cert. denied,
513 U.S. 1171 (1995) . . . . . . . . . . . . . . . 22-24

United States v. Dominguez,
316 F.3d 1054 (9th Cir. 2003) . . . . . . . . . 37, 45, 46

United States v. Dominguez-Benitez,
__ U.S. __, 124 S.Ct. 2333 (2004) . . . . . . . . . 54, 55

**TABLE OF AUTHORITIES**
(Continued)

PAGE(S)

**CASES**:

United States v. Dunnigan,
    507 U.S. 87 (1993) . . . . . . . . . . . . . . . . . . . 42

United States v. Farner,
    251 F.3d 510 (5th Cir. 2001) . . . . . . . . . . . . . 19

United States v. Fleming,
    215 F.3d 930 (9th Cir. 2000) . . . . . . . . . . . . . 44

United States v. Franklin,
    321 F.3d 1231 (9th Cir.), cert. denied,
    540 U.S. 858 (2003) . . . . . . . . . . . . . . . . . . 36

United States v. Garrett,
    190 F.3d 1220 (11th Cir. 1999) . . . . . . . . . . . . 26

United States v. Gravenhorst,
    377 F.3d 49 (1st Cir. 2004) . . . . . . . . . . . . . 21

United States v. Harris,
    534 F.2d 207 (10th Cir. 1975), cert. denied,
    429 U.S. 941 (1976) . . . . . . . . . . . . . . . . . . 28

United States v. Hornaday,
    392 F.3d 1306 (11th Cir. 2004) . . . . . . . . . . . . 18

United States v. Johnson,
    132 F.3d 1279 (9th Cir. 1997) . . . . . . . . . . . . . 9

United States v. Johnson,
    820 F.2d 1065 (9th Cir. 1987) . . . . . . . . . . . . 27

United States v. Jones,
    231 F.3d 508 (9th Cir. 2000) . . . . . . . . . . . . . 23

United States v. Kinslow,
    860 F.2d 963 (9th Cir. 1988), cert. denied,
    493 U.S. 829 (1989) . . . . . . . . . . . . . . . . . . 25

United States v. Loya,
    807 F.2d 1483 (9th Cir. 1987) . . . . . . . . . . . . 22

**TABLE OF AUTHORITIES**
(Continued)

**PAGE(S)**

**CASES:**

United States v. Mares,
    940 F.2d 455 (9th Cir. 1991) . . . . . . . . . . . . . . 17

United States v. Maxwell,
    386 F.3d 1042 (11th Cir. 2004) . . . . . . . . . . . . . 4

United States v. McGraw,
    351 F.3d 443 (10th Cir. 2003), cert. denied,
    124 S.Ct. 2406 (2004) . . . . . . . . . . . . . . . . 41

United States v. Meek,
    366 F.3d 705 (9th Cir. 2004) . . . . . . . . . . 3, 18, 19

United States v. Melendrez,
    389 F.3d 829 (9th Cir. 2004). . . . . . . . . . . . . . 37

United States v. Miranda,
    348 F.3d 1322 (11th Cir. 2003) . . . . . . . . 38, 39, 41

United States v. Mitchell,
    353 F.3d 552 (7th Cir. 2003) . . . . . . . . . . . . 3, 41

United States v. Mulloy,
    3 F.3d 1337 (9th Cir. 1993) . . . . . . . . . . . . . 46

United States v. Nelson,
    66 F.3d 1036 (9th Cir. 1995) . . . . . . . . . . . . . 18

United States v. Olano,
    507 U.S. 725 (1993) . . . . . . . . . . . . . . 36, 37

United States v. Orrega,
    363 F.3d 1093 (11th Cir. 2004) . . . . . . . . . . . . 26

United States v. Panfil,
    338 F.3d 1299 (11th Cir. 2003) . . . . . . . . . . . . 40

United States v. Patterson,
    230 F.3d 1168 (9th Cir. 2000) . . . . . . . . . . . . 22

**TABLE OF AUTHORITIES**
(Continued)

**PAGE(S)**

**CASES**:

United States v. Pearson,
    312 F.3d 1287 (9th Cir. 2002), amended,
    321 F.3d 790 (9th Cir. 2003) . . . . . . . . . . . . .   52

United States v. Quijada,
    588 F.2d 1253 (9th Cir. 1978)  . . . . . . . . . . . .   30

United States v. Rashkovski,
    301 F.3d 1133 (9th Cir. 2002), cert. denied,
    __ U.S. __, 123 S.Ct. 1010 (2003)  . . . . . . . . . .   18

United States v. Roach,
    164 F.3d 403 (8th Cir. 1998), cert. denied,
    528 U.S. 845 (1999)  . . . . . . . . . . . . . . . . .   46

United States v. Rodriguez,
    __ F.3d __, 2005 WL 272952, at *11
    (11th Cir. Feb. 4, 2005)  . . . . . . . . . . . . . .   56

United States v. Root,
    296 F.3d 1222 (11th Cir. 2002), cert. denied,
    537 U.S. 1176 (2003) . . . . . . . . . . . . . . . . 19, 41

United States v. Sanchez,
    176 F.3d 1214 (9th Cir. 1999)  . . . . . . . . . . . .   28

United States v. Schomburg,
    929 F.2d 505 (9th Cir. 1991)  . . . . . . . . . . . .   51

United States v. Scrivener,
    189 F.3d 944 (9th Cir. 1999)  . . . . . . . . . . . 43, 44

United States v. Shinners,
    892 F.2d 742 (8th Cir. 1989)  . . . . . . . . . . . .   51

United States v. Si,
    343 F.3d 1116 (9th Cir. 2003)  . . . . . . . . . . . .   22

United States v. Strange,
    102 F.3d 356 (8th Cir. 1996)  . . . . . . . . . . . .   46

# TABLE OF AUTHORITIES
(Continued)

**PAGE(S)**

## CASES:

United States v. Thickstun,
    110 F.3d 1394 (9th Cir.), cert. denied,
    522 U.S. 917 (1997)  . . . . . . . . . . . . . . . .  22
United States v. Thompson,
    925 F.2d 234 (8th Cir. 1991)  . . . . . . . . . . .  52

United States v. Wilson,
    350 F. Supp. 910 (D. Utah 2005)  . . . . . . . . . .  57

United States v. Yazzie,
    59 F.3d 807 (9th Cir. 1995)  . . . . . . . . . . 26, 27

United States v. Young,
    470 U.S. 1 (1985)  . . . . . . . . . . . . . . . . .  56

## STATUTES AND RULES:

18 U.S.C. § 1470  . . . . . . . . . . . . . . . . 2, 20, 21

18 U.S.C. § 2422(b) . . . . . . . . . . . . . . . . . .  18

18 U.S.C. § 2241  . . . . . . . . . . . . . . . . . . .  38

18 U.S.C. § 2242  . . . . . . . . . . . . . . . . . 38, 41

18 U.S.C. § 2243(a) . . . . . . . . . . . . . . . . . .  39

18 U.S.C. § 2246. . . . . . . . . . . . . . . . . . . .  40

18 U.S.C. § 2252  . . . . . . . . . . . . . . . . . . 2, 24

18 U.S.C. § 2422(b) . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3231  . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . 35, 56, 57

18 U.S.C. § 3553(a)(4) . . . . . . . . . . . . . . . . .  35

**TABLE OF AUTHORITIES**
(Continued)

**PAGE(S)**

**STATUTES AND RULES:**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . 1

Hawaii Revised Statutes § 707-700 . . . . . . . . . . . . . . 20

Hawaii Revised Statutes § 707-708(1) . . . . . . . . . . . 19

Hawaii Revised Statutes § 707-730(c) . . . . . . . . . . . 20

**OTHER AUTHORITIES:**

Sentencing Reform Act . . . . . . . . . . . . . . . . . . . . 34

U.S. Const., amend. VI . . . . . . . . . . . . . . . . . . 34, 36

U.S.S.G. § 2A3.1 . . . . . . . . . . . . . . . . . . . . . . 38

U.S.S.G. § 2A3.2(b)(3)(A) . . . . . . . . . . . . . . . . . . 41

U.S.S.G. § 2A3.2 . . . . . . . . . . . . . . . . . . . . . 38-41

U.S.S.G. § 2A3.4 . . . . . . . . . . . . . . . . . . . . 38, 39

U.S.S.G. § 2A3.4(c)(2) . . . . . . . . . . . . . . . . . . . 39

U.S.S.G. § 2G1.1 . . . . . . . . . . . . . . . . . . . . 37, 38

U.S.S.G. § 2G1.1(c)(3) . . . . . . . . . . . . . . . . . . . 38

U.S.S.G. § 2G2.1 . . . . . . . . . . . . . . . . . . . . . . 38

U.S.S.G. § 2G3.1 . . . . . . . . . . . . . . . . . . . . . . 41

U.S.S.G. § 3C1.1 . . . . . . . . . . . . . . . . . . . . . . 42

U.S.S.G. § 3E1.1 . . . . . . . . . . . . . . . . . . . . . . 43

U.S.S.G. § 3E1.1(a) . . . . . . . . . . . . . . . . . . . . . 43

U.S.S.G. § 4A1.1(b) . . . . . . . . . . . . . . . . . 46, 49, 51

**TABLE OF AUTHORITIES**
(Continued)

**PAGE(S)**

**OTHER AUTHORITIES:**

U.S.S.G. § 4A1.1(c) . . . . . . . . . . . . . . . . . . . . 45, 47

U.S.S.G. § 4A1.2 . . . . . . . . . . . . . . . . . . . . . 51

U.S.S.G. § 4A1.2(b) . . . . . . . . . . . . . . . . . . . . 50

U.S.S.G., Appendix A (2003 ed.) . . . . . . . . . . . . . . . 38

x

BRIEF OF PLAINTIFF-APPELLEE UNITED STATES

## I.   JURISDICTION, TIMELINESS OF APPEAL AND BAIL STATUS

The district court had jurisdiction under 18 U.S.C.
§ 3231.   Judgment was entered on February 3, 2004.   A timely
notice of appeal was filed on February 12, 2004.   This court has
jurisdiction under 28 U.S.C. § 1291.

Defendant is presently serving a term of incarceration
of 87 months.

## II.   ISSUES PRESENTED

Whether there was sufficient evidence to support
convictions for the attempted enticement of a minor for
prohibited sexual activity, and for the attempted distribution of
obscene material to a minor.

Whether defendant was entrapped as a matter of law
where defendant initiated sexual overtures towards an undercover
agent who he thought was a minor girl, and said he previously had
sex with other minor girls.

Whether the district court abused its discretion in
admitting in evidence a sexually explicit photograph which
defendant sent to the undercover agent as part of his attempt to
entice a minor to have sex.

Whether it was prosecutorial misconduct for the
government to offer the photograph in evidence.

1

Whether the district court's sentencing under the United States Sentencing Guidelines prior to <u>United States v. Booker</u>, __ U.S. __, 125 S.Ct. 738 (Jan. 12, 2005) constitutes plain error affecting defendant's substantial rights where: (1) the district court properly calculated the guideline range; (2) the court acknowledged its discretion to depart below the range, but declined to do so; and (3) the court instead indicated that a sentence at the highest end of the guideline range was necessary to promote the goals of the criminal justice system.

III. STATEMENT OF CASE

A.   Nature of Case and Proceedings Below

On February 27, 2002, a federal grand jury in the District of Hawaii returned an indictment charging defendant with using the Internet in an attempt to entice a minor to engage in prohibited sexual conduct, a violation of 18 U.S.C. § 2422(b). See Clerk's Record (CR) at 9, defendant's Excerpts of Record (ER) at 180.

On February 12, 2003, the grand jury returned a superseding indictment charging defendant with one count of attempted sexual enticement of a minor, six counts of attempting to transfer obscene material to a person under the age of 16 years, and one count of attempted distribution of child pornography, violations of 18 U.S.C. §§ 2422(b), 1470 and 2252. CR 59, ER 188.

2

Trial began on May 29, 2003. On June 3, 2003, the district court granted a judgment of acquittal as to the attempted distribution of child pornography count. CR 106, ER 195. On June 6, 2003, the jury found defendant guilty of the sexual enticement charge, and five of the six obscenity counts. CR 113, ER 196.

On January 27, 2004, defendant was sentenced under the United States Sentencing Guidelines (U.S.S.G.). Defendant received a jail term of 87 months, to be followed by three years of supervised release. Judgment was entered accordingly. ER 169-76.

B.   Factual Summary

In November 2001, Special Agent Flint Waters of the Wyoming Division of Criminal Investigation created several undercover Internet identities. See Transcript of Proceedings (TR.) at 2-40.[1] One of the identities was for "Mandy," a purported girl with a screen name of "Mandyishot420."[2] Id.

---

[1]   The trial transcripts will be referred to as "TR. __-__," with the numbers representing the volume and page numbers. The transcripts of the sentencing will be referred to by date and page number. If portions of the transcripts or exhibits appear in the ER or the government's Supplemental Excerpts of Record (SER), they will be referred to by page number of the appropriate excerpts.

[2]   "A screen name is an appellation used to identify oneself in a chat room or when sending instant messages to another computer user. Although it can be the user's real name, it is more often a pseudonym." United States v. Meek, 366 F.3d 705, 710 n. 3 (9th Cir. 2004), quoting United States v. Mitchell, 353

3

SA Waters created an online profile indicating that Mandy was a 15 year old girl who lived in Cheyenne, Wyoming. TR. 2-40; Ex. 100, SER 1. Other persons could view the profile and contact Mandy over the Internet.[3]

After creating the undercover identity, SA Waters received a message from defendant, who used a Yahoo screen name of "tsneptune1." TR. 2-55. Defendant asked to be added to Mandy's "friend" list, and SA Waters agreed. Id. On December 4, 2001, defendant sent Mandy an off-line message, thanking her for adding him to her list. Defendant, a resident of Lahaina, Maui, also said, "maybe you would like to come to Maui when you get to know me." Ex. 102, SER 3; TR. 2-56-58.

Defendant thereafter initiated various on-line chats with Mandy over the next couple of months. The chats were sexually explicit.[4] The first chat was on December 11, 2002.

_____

F.3d 552, 554 n.3 (7th Cir. 2003).

[3] A profile is a web page on which someone can display personal information. TR. 2-41-44. Yahoo! maintains a directory of profiles which may be searched by categories of information, such as name, hobbies, age, sex and geographic location. TR. 2-52. A person may communicate with the owner of the profile by clicking on an icon, sending an e-mail, or asking to be added to that person's "friend" or "buddy" list, which will allow for on-line chats or contacts. TR. 2-47-51; see also United States v. Maxwell, 386 F.3d 1042, 1049 n. 6 (11th Cir. 2004). An off-line message may be sent when a person is not on-line. When the recipient goes on-line, he receives notification of the receipt of an off-line message, which he can then read. TR. 2-47-49.

[4] The chats did not take place in a chat room. They were instead private chats between defendant and Mandy only, and could

SA Waters viewed defendant's Yahoo profile during or before the
chat. The profile identified defendant as "Tom," said he lived
in Maui, and listed interests including Hawaii, sex, "fisting,"[5]
"Harley Davidson," and "older men for younger women." The
profile also displayed defendant's picture. Ex. 101, SER 2; TR.
2-59-61.

During this initial chat, defendant said he lived in
Hawaii, but was from Wyoming (like Mandy). Ex. 103, SER 4.
Defendant said he liked Mandy's profile (which said she was 15),
and asked, "If you like older guys, would you like to get to know
me then maybe come to Hawaii one day?" Mandy told defendant, "I
am 15, is that ok?" Defendant replied, "yes it is, I like your
age." SER 4.

---

not be observed by others. TR 4-170. The chat logs were
archived and introduced in evidence at trial. TR. 2-66-67. The
more substantive chats are included within the government's SER.
Although the language is often graphic and vulgar, it is highly
relevant to the enticement and obscenity charges and thus will be
quoted in this brief. See United States v. Crow, 164 F.3d 229,
232 n.2 (5th Cir.), cert. denied, 526 U.S. 1160 (1999).

[5] "Fisting" involves placing a fist inside a woman's
vagina. TR. 2-86-87.

5

About eight minutes into their first chat,[6] defendant identified himself as "Tom" or "Tommy." SER 4; TR. 2-71. Defendant then sent Mandy five pictures of himself. Defendant said, "Let me send you a nice g rated pic of me first," and sent the picture from his Yahoo profile. SER 4; TR. 2-74.[7] Defendant asked if Mandy was a virgin, and whether she wanted a picture which was not on his profile. When Mandy said she was not a virgin, defendant said, "then this shouldn't scare you away." SER 4-5. Defendant then sent a picture of himself naked, holding his erect penis in his hand, and three images showing close up views of his erect penis. Exs. 2-5; TR. 2-75-80. Defendant said, "I am only sending you these because I hope you will want to come her [sic] and be with me, and you might want to really feel me in you." SER 5; TR. 2-83. Defendant sent these pictures approximately 15 minutes into his first chat with Mandy. Id.

---

[6]    The chat logs bear time stamps indicating when each communication was sent. The times appearing next to the name "Tsneptune" correspond with the times on defendant's computer, whereas the times next to "Mandyishot420" corresponds to the times on SA Waters' computer. The times were set according to Mountain Time Zone, since SA Waters archived the chats on his computer in Wyoming. TR. 2-57, 2-69.

[7]    Yahoo! Messenger allows photographs to be transferred during on-line chats. A user selects "send a file," and chooses a picture to be sent. The intended recipient receives a box indicating that the other person wishes to send a file. If the recipient clicks "accept," the file is transmitted automatically. Although chat logs reflect the text of conversation, they do not explicitly reflect when files were transferred. Nor do they reflect the titles of files which were transferred. TR. 2-74-81.

During this same initial chat, defendant stated, "I am in great shape, and do know how to make a girl feel good, if you know what I mean." SER 4. Defendant said he wanted "more than just sex," and asked what Mandy wanted to experience sexually. When Mandy asked what defendant liked to do, he said "lots of oral," and that he would tie her up, or do "fisting" if she liked. Defendant also said, "I would like to have you go all the way down on me, and then we would exchange and I would tease you until you couldn't stand it and begged me to make you cum." TR. 2-88. When Mandy asked whether defendant had taught a girl her age, he responded, "yes I have... younger once ... she was 13 and I was 30." SER 6; TR. 2-91. Defendant said "getting a girl off is what I really enjoy ... espesially [sic] a younger girl." SER 6.

On December 13, 2001, defendant contacted Mandy again. TR. 2-93. Defendant told Mandy, "I hope you liked what you saw of me," and asked, "Did you get a little wet when you saw what I looked like nude?" Ex. 104, SER 7. Defendant then sent three of the same images of his penis which he had previously sent to Mandy. Defendant also sent an image of his semi-erect penis. Ex. 6. Noting that it was "one of me limp," defendant said, "You could get me hard with your lips though." SER 9.[8] Defendant

---

[8] The pictures all had file titles beginning with "T unit." During the trial, defendant testified the name referred to a "member of my anatomy." TR. 4-176-77.

7

said, "I will keep you very satisfied with sex when you are here."  Id.

        Defendant told Mandy he liked to teach about sex, which was "why I have been looking for the right younger girl."  SER 7. Defendant said he had previously been with "a couple of 13 year old girls."  SER 10.  Defendant also spoke of various sexual acts "different than the usual vanilla type of sex," including anal sex, and playing "daddy/little girl type of roleplay."  SER 7-8.

        During the chat, Mandy asked defendant to describe the wildest picture which he had.  Defendant said he had a picture of a 15 year old girl who was into dogs.  According to defendant, the girl put peanut butter on her private parts so her dog would lick it off.  SER 11.  Defendant then sent Mandy an image entitled "corynme.jpg," which showed a young naked girl, on hands and knees, with a dog licking her vaginal area.  Ex. 7; TR. 2- 115.  Defendant claimed he had talked to the girl, but had not met her.  SER 11.[9]

        Defendant said the same girl, 15 year old "Cory," had a friend who "took a dare and fucked a guy who was really old." Id.  Defendant then sent Mandy a picture entitled "Mandy_taken_a_ dare_for _$100.jpg."  Ex. 8.  Defendant claimed he had received the picture from Cory.  SER 11.  The image showed an apparent

_____

        [9]   At trial, defendant testified this was a "made-up story" and "ad-libbing" on his part.  TR. 4-192.

8

minor girl having sexual intercourse with an adult male. When Mandy asked which picture was defendant's favorite, he said, "I like the one of the older guy dining [sic] it to the young girl ... I like younger girls that's way [sic]." Defendant also said, "I thought you were the Mandy in the pic of the dare."[10] SER 11.

During the same December 13, 2001 chat, defendant reiterated that Mandy's age was fine, and that, "I do want to be inside of you, and teach you new things." He said he had been "with a couple of 13 year old girls," and that he once met a 13-year-old girl on the beach, after she snuck out of her hotel room without her parents' knowledge. SER 10-11. Defendant told Mandy, "I hope that me and you can be together before you turn 18." Defendant said that, for the right girl, it "would be worth the price of a plane ticket," and identified himself as "Tom Schnepper." Mandy identified herself as "Mandy Swanson." SER 11. Defendant also asked Mandy to take a picture of herself with

_____

[10] SA Waters had conducted other investigations where he assumed the persona of an underage child, or a parent with young children. During those investigations, SA Waters "repeatedly" received images of children having sex. According to SA Waters, "it is very common for folks to send me these pictures of children going all the way down to toddlers." TR. 2-39, 3-85. On cross-examination, SA Waters further described defendant's acts in this case as being "two months of grooming" a potential victim. TR. 3-86. As this court has noted, "'Shaping and grooming' describes the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point of intercourse." United States v. Johnson, 132 F.3d 1279, 1283 n.2 (9th Cir. 1997).

9

her thumb in her private parts, and gave her his mailing address in Lahaina.  SER 9.

Defendant next contacted Mandy on December 17, 2001. Ex. 106.  Defendant asked whether Mandy was "thinking about comming [sic] to Maui," and said maybe she could come if her mother came along too.  Defendant said, "I do want to be inside of you and teach you new things," and that, "I will have you live with me."  SER 13.  When Mandy asked if he was "rely [sic] ok that I am 15," defendant said, "your age is fine."  Defendant also said she could transfer to high school in Maui, and get her GED when she turned 16.  Defendant noted that they needed to work out the issues, since "we could both get in big trouble if you were found, and your mom tracked you down."  SER 14.

Defendant and Mandy next chatted on December 19, 2001. Ex. 107; TR. 2-138.  Mandy said her "grandmother" might take her to Maui, and asked whether defendant would pick her up at the airport.[11]  Defendant said yes, and told Mandy to tell her grandmother that he was her boyfriend, and was 20 years old. Defendant told Mandy to fly to Kahului airport, and gave her his telephone number in Lahaina.  SER 16-18.  Defendant said Mandy would be his "little girl" or "sweet little girl," and that it

---

[11] SA Waters had contacted the State of Hawaii Internet Crimes Against Children Task Force shortly before the chat, and advised them of his investigation.  TR. 2-138.  The Hawaii authorities asked SA Waters to see whether defendant would meet "Mandy" at the airport.  TR. 2-141-42.

10

"turns me on to know ... that you want me to be your daddy for
starters." SER 18-20. Defendant also said the best time to come
to Maui was either the middle of January or the beginning of
February. SER 19.

The chats continued in December. On December 20, 2001,
defendant asked Mandy whether she had made arrangements to come
to Maui. He said Mandy would like "the warmth of Maui," and
said, "I hope you fall in love with me and want to stay." SER
26.

On January 2, 2002, Mandy told defendant that her
grandmother was giving her a trip to Hawaii as a Christmas
present. Ex. 111. Defendant said he hoped Mandy's grandmother
would not have to meet him, as she would know he was not 20 years
old. SER 28. Defendant also asked Mandy to describe her own
body. He asked, "Are you ready for daddy to be inside of you,"
and said, "Daddy is ready and waiting for you." Id.

Defendant and Mandy thereafter had chats through
January. On January 3, 2002, defendant asked whether Mandy was
on the pill. When Mandy said no, defendant asked, "do you think
you should get on it?" Ex. 112, SER 30. Defendant later asked
Mandy to tell him her favorite fantasy, "one that I might be able
to do to you." Ex. 115, SER 33. Defendant said if Mandy had a
"rape fantasy," they should have sex "before we really know each
other well, that way it feels very real." Ex. 127, SER 38.

11

Defendant suggested that they act out the rape in the woods on the way home from the airport. Defendant said he would bring a beach towel to lie on. Ex. 133, SER 43.[12]  Defendant said he could also rape Mandy in his bed, noting "I already got the rops [sic] ready for you they are tied to the bed with straps for your legs."  Id.

Mandy eventually said she would be traveling to Oahu on February 14, 2002, and could go to Maui the next day.[13]  Mandy said she would call defendant from Oahu, and confirm her travel arrangements. On February 14, 2002, Jodi Shea, a Wyoming undercover officer, had a telephone conversation with defendant while posing as Mandy. Officer Shea pretended to be calling from Honolulu. During the call, defendant said he would buy Mandy an airline ticket for travel from Oahu to Maui the next day, and gave her a particular Aloha Airlines flight number. Ex. 136; TR 3-127-33.

On February 15, 2002, law enforcement agents placed defendant under surveillance on Maui before the plane's scheduled arrival. TR. 3-149. Agents saw defendant ride his purple Harley Davidson to the airport terminal, while carrying a lei and a

---

[12]  Defendant later said, "maybe I will handcuff you, and make you suck on me in the woods ... then push you back on the towel, and ripo [sic] your panties off." SER 44.

[13]  The proposed "meeting" date had been delayed several times for law enforcement operational reasons. TR. 2-175, 182-83.

towel.  Agents approached defendant and arrested him.  TR. 3-149-50.  During a search incident to arrest, agents found two condoms in defendant's jeans, and a pair of handcuffs in his jacket pocket.  Exs. 137, 138.  Agents also found an Aloha Airlines receipt showing that defendant had bought a one way ticket for Mandy Swanson from Oahu to Maui.  Ex. 140; TR. 3-162-69, 176.

Following his arrest, and a waiver of his <u>Miranda</u> rights, defendant made statements.  TR. 3-151-155.  Defendant admitted being "tsneptune1" and chatting with "Mandyishot420." TR. 3-156.  Defendant was shown Exhibits 2-8, the photographs of his anatomy, the girl with the dog, and the young woman having sex with the man.  Defendant admitted sending the photographs to Mandy.  Defendant said he believed the girl in Exhibit 8 was a minor, and that he sent it to Mandy because she had requested images of girls her age.  TR. 3-159.  Agents later searched defendant's apartment, and found ropes and a hook attached to his bed frame, just as he had said in earlier chats with Mandy.  TR. 3-169-70; 189-90.

At trial, defendant testified on his own behalf. Defendant admitted having on-line chats with Mandy, and sending her the photographs.  Defendant admitted initiating contact with Mandy, but said the December 4, 2001 offline message was not their first communication.  Defendant said the two actually met in November 2001 in an adult chat room, where they had a sexually

13

explicit chat covering "rough play, bondage and a rape fantasy."
TR. 4-166-67.  Defendant testified that, based on this chat, he
believed Mandy was an adult.  Defendant implied that his later
chats with Mandy were explicit only because he believed she was
an adult interested in various sexual topics.

Defendant denied attempting to have sex with a minor.
Defendant claimed his chats were nothing more than "cyber play,"
an online fantasy game which involved role playing.  TR. 4-29.
Defendant said he thought Mandy was an adult pretending to be a
15-year-old, and that the chats were merely "stimulation to the
mind."  TR. 4-187.  Defendant denied being sexually excited by
the chats, and claimed he only told Mandy what she wanted to
hear.[14]  Defendant admitted that buying an airline ticket and
going to the airport with a lei and handcuffs were not a fantasy.
TR. 4-148.  According to defendant, the game had escalated to the
point where he just wanted to see whether Mandy would actually
appear at the airport and meet him.  Defendant said that, if
Mandy had shown up and been an actual minor, he would have "back-
pedaled" and called her grandmother.  TR. 4-123-26.

Defendant also explained other evidence in the case.
He said the handcuffs were a decoration for his motorcycle, and

---

[14]    This was in stark contrast to defendant's earlier
statements to Mandy, where he said he was physically aroused by
during their chats.  SER 9.  At trial, defendant said this was
just a lie.  TR. 4-187.

14

that the condoms had been left in his jacket from an earlier meeting with his estranged wife. TR. 4-125-26. Defendant said the ropes on his bed were not for bondage, but rather to move and reassemble his bed. TR. 4-130-32.[15]

The jury rejected defendant's explanations and found him guilty of attempted sexual enticement of a minor, and the attempted transmission of five obscene photographs to a minor.

On January 27, 2004, the court sentenced defendant. The court made factual findings which triggered sentencing enhancements for (1) defendant's intent to have sex with a minor under 16 years of age, (2) his use of a computer during the offense, and (3) his obstruction of justice. The court calculated the guideline range at 70-87 months, and denied a defense motion for downward departure. ER 144-51. The court then sentenced defendant to 87 months, stating that a sentence at the highest end of the range was appropriate, given the predatory nature of defendant's conduct, his refusal to accept responsibility, his prior criminal record, and the likelihood that he will commit future crimes. ER 161-62.

This appeal followed.

---

[15] Defendant had told Mandy something different: "I was thinking about maybe handcuffing you to the bed, and then strapping your legs apart." SER 40.

15

IV.  SUMMARY OF ARGUMENT

There was ample evidence supporting the convictions for attempted sexual enticement of a minor, and for the attempted transfer of obscene material to a minor.

The district court did not abuse its discretion by admitting a photograph depicting a young woman and an adult man having sex.  Defendant sent the photograph to a person he thought was a minor, believing it showed a minor having sex with an adult man.  Defendant said he wanted to engage in the same act with his intended victim before she turned 18.  Regardless of whether the photograph was child pornography, it was direct evidence of how defendant attempted to entice a minor to have sex.  The prosecutor did not commit misconduct by using the evidence, and did not mislead the jury into thinking it was child pornography.

Defendant was not entrapped as a matter of law.  The jury reasonably found that defendant was predisposed to commit the offenses where he initiated contact with a person he thought was a minor, solicited her for sex, and sent sexually explicit photographs, all without showing any reluctance.

The court did not commit any plain error affecting defendant's substantial rights by sentencing him under the sentencing guidelines.  The court correctly calculated the guideline range, which is now advisory under United States v. Booker, 125 S.Ct. 738.  The court refused to depart below the

16

applicable range, even though it knew it could do so.  The court instead imposed the highest possible sentence in the range. Under the circumstances, defendant cannot show that he would have received a lower sentence had the court known the guidelines were advisory.

V.   ARGUMENT

    A.   There Was Sufficient Evidence Supporting The Convictions.

        i.   Standard of Review.

The evidence is sufficient to support a conviction if, "reviewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)(emphasis in original).  "The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict."  <u>United States v. Mares</u>, 940 F.2d 455, 458 (9th Cir. 1991)(citations omitted).

        ii.   The Evidence Was Not Only Sufficient, But Overwhelming.

           a.   The Attempted Enticement Conviction.

Count 1 charged defendant with using the Internet, a means and facility of interstate commerce, to attempt to persuade, induce and entice a minor to engage in prohibited

17

sexual activity, in violation of 18 U.S.C. § 2422(b).[16]  The
government was required to prove that defendant knowingly
"(1) attempt[ed] to (2) persuade, induce, entice, or coerce (3) a
person under 18 years of age (4) to engage in sexual activity
that would constitute a criminal offense."  United States v.
Meek, 366 F.3d 705, 718 (9th Cir. 2004).  The terms "persuade,
induce and entice" are to be given their common usage and
meaning.  United States v. Rashkovski, 301 F.3d 1133, 1136 (9th
Cir. 2002), cert. denied, 537 U.S. 1179 (2003).  Defendant did
not have to "create[] out of whole cloth" the desire of the
ostensible 15-year-old girl to have sex; it was enough if he
simply tried to convince or influence her, or otherwise "made the
possibility more appealing."  Id. at 1137.

     Defendant of course was actually chatting with SA
Waters, a criminal investigator in Wyoming.  But "an actual minor
victim is not required for an attempt conviction under 18 U.S.C.
§ 2422(b)."  Meek, 366 F.3d at 717 (citations omitted).  All that
is required is that defendant knowingly solicited sex from a
person he thought was a minor, and "took a substantial step
toward completing the violation."  Id. at 720, quoting United

_____

     [16]     The Internet is a means and facility of interstate
commerce.  United States v. Hornaday, 392 F.3d 1306 (11th Cir.
2004)("It is a federal crime to use the internet to knowingly
attempt to persuade, induce, entice, or coerce a minor to engage
in unlawful sexual activity."); and United States v. Meek, 366
F.3d 705 (9th Cir. 2004).

18

States v. Nelson, 66 F.3d 1036, 1042 (9th Cir. 1995). "The guilt arises from the defendant's knowledge of what he intends to do." Id. at 719; see also United States v. Root, 296 F.3d 1222, 1227 (11th Cir. 2002), cert. denied, 537 U.S. 1176 (2003)(defendant's belief that a minor was involved sufficient to sustain attempt conviction); and United States v. Farner, 251 F.3d 510 (5th Cir. 2001)(same).

Viewed in the light most favorable to the government, the evidence amply supported the attempt conviction. Defendant contacted "Mandy" after seeing her profile, which said she was 15 years old. When explicitly told of her age, defendant said it was fine. Defendant then described his desire to engage in various sexual activities, including intercourse, oral sex, bondage and a rape fantasy. Defendant also sent Mandy sexually explicit images of himself and others. Defendant then bought Mandy an airline ticket, and went to meet her at the airport, while carrying a lei, handcuffs and condoms. In short, defendant's dialog, sexual references and acts all "mark his conduct as criminal in nature." Meek, 366 F.3d at 720.

The sexual activity which defendant intended also constituted a criminal offense under Hawaii state law. A person commits sexual assault in the first degree under Hawaii law if he has sexual penetration with a minor between the ages of 14 and 16, provided the person is not married to, and at least five

19

years older than, the minor. See Hawaii Revised Statutes (HRS)
§ 707-730(c), SER 49. "Sexual penetration" includes vaginal
intercourse, oral sex, or the physical intrusion of a person or
object into the genitals of another. HRS § 707-700; SER 48.
Defendant plainly intended such acts with Mandy. Defendant was
37 at the time, or 22 years older than Mandy's purported age.
TR. 4-175. The evidence thus amply supports the jury's
conclusion that defendant used the Internet in an attempt to
induce a minor to engage in sexual activity which would have
violated Hawaii state law.

           b.    The Obscenity Convictions.

           Similarly futile is defendant's challenge to the
sufficiency of the evidence supporting the obscenity convictions.
Counts 2-5 and 7 charged him with using the Internet in an
attempt knowingly to transfer obscene materials to a person he
knew was under the age of 16 years, in violation of 18 U.S.C.
§ 1470. A matter is obscene if it appeals to the prurient
interest, describes sexual conduct in a patently offensive way,
and lacks serious literary, artistic or scientific value. Miller
v. California, 413 U.S. 15, 24 (1973).

           Counts 2-5 were based on defendant's transmission of
pictures which showed himself holding his erect penis. Exs. 2-5.
Count 7 involved the transmission of the picture of a dog licking
a girl in her private parts. Ex. 7. Defendant sent these

                              20

materials to SA Waters, who was posing as a 15-year-old girl. The jury was instructed that the elements of the charged offenses were that defendant (1) used the Internet (2) to transfer materials to a person under 16 years of age, (3) knew the general nature of the material which was transferred, and (4) that the materials were obscene. TR. 6-105-6. The jury was further instructed that, in order to sustain an attempt conviction, it had to find that defendant took a substantial step toward committing the substantive crime. Id. At trial, defendant admitted sending these images, knowing what they depicted, but denied believing that Mandy was under 16 years of age. TR. 4-176-77.[17] The jury could reasonably reject this testimony, and find that defendant sent the images to a person he thought was under 16, knowing of their content, and thereby took a substantial step towards the commission of the crime. The jury could also reasonably conclude that the images were legally obscene. Cf. United States v. Gravenhorst, 377 F.3d 49 (1st Cir. 2004)(18 U.S.C. § 1470 convictions affirmed for transmission of

_____

[17] Defendant's knowledge of the content of the images is reflected in the chat logs. After sending the pictures of his anatomy, defendant asked Mandy, "Did you get a little wet when you saw what I looked like nude?" Ex. 104. Defendant also described the image of the girl and the dog, claiming that the girl had put peanut butter on her private parts. TR. 2-115.

21

"sexually-charged images, including a picture of a man and woman having intercourse and a picture of an erect penis").[18]

B.   Defendant Was Not Entrapped As A Matter Of Law.

Entrapment is normally a jury issue. United States v. Davis, 36 F.3d 1424, 1430 (9th Cir. 1994), cert. denied, 513 U.S. 1171 (1995). Indeed, the jury here was fully instructed on the issue, see TR. 6-111-112, and found that defendant was not entrapped. Defendant does not challenge the jury instructions, but instead argues that he was entrapped "as a matter of law."

i.   Standard of Review.

The question of whether a defendant was entrapped as a matter of law is reviewed de novo. United States v. Thickstun, 110 F.3d 1394, 1396 (9th Cir.), cert. denied, 522 U.S. 917 (1997). Although the issue is reviewed de novo, this court should defer to the jury's credibility determinations unless, viewed in the light most favorable to the government, the evidence could not permit a reasonable jury to conclude that defendant was not entrapped. United States v. Si, 343 F.3d 1116,

_____

[18]   The jury was fully instructed on the legal standards of obscenity. TR. 6-106-110. Defendant has not challenged those instructions. His instead simply claims that "the evidence is ... insufficient to prove each and every element beyond reasonable doubt," without providing further argument. Opening Brief at 47. Any such issues which are raised, but not supported by argument, should be deemed abandoned and not considered, "unless a failure to do so would result in a manifest injustice." United States v. Loya, 807 F.2d 1483, 1487 (9th Cir. 1987); United States v. Patterson, 230 F.3d 1168, 1172 n. 3 (9th Cir. 2000).

22

1125 (9th Cir. 2003). Further, to establish entrapment as a matter of law, a defendant must point to "<u>undisputed</u> evidence of entrapment." United States v. Jones, 231 F.3d 508, 516 (9th Cir. 2000) (emphasis in original, and citation omitted).

> ii. Defendant Was Predisposed To Have Sex With A Minor, And To Distribute Obscene Images.

In evaluating predisposition, this court is to consider five factors: (1) the character and reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether defendant showed any reluctance; and (5) the nature of the government's inducement. United States v. Davis, 36 F.3d at 1430, citing United States v. Becerra, 992 F.2d 960, 963 (9th Cir. 1993). "Although none of these five factors controls, the most important is the defendant's reluctance to engage in criminal activity." Id.

There was overwhelming evidence of defendant's predisposition, and the lack of any government inducement. verdict. SA Waters simply created a Yahoo! profile for "Mandy," a 15-year-old Wyoming girl. Defendant thereafter contacted "Mandy," saying he too was from Wyoming. When Mandy said she was 15, defendant said he "liked her age." Ex. 103. Fifteen minutes into their first chat, without any prompting, defendant sent Mandy pictures of his erect penis. TR. 2-75-80. Defendant said

23

he liked to teach younger girls about sex, and had previously been with 13-year-olds.

In short, defendant acted completely without government inducement. He was an aggressor rather than a reluctant participant. Defendant has failed to point to any undisputed evidence of entrapment, as he is required to do. Viewed in the light most favorable to the government, the jury reasonably concluded that defendant was "predisposed to commit the charged offenses." United States v. Davis, 36 F.3d at 1430.

C.   Exhibit 8, A Sexually Explicit Photograph,
     Was Properly Used And Admitted At Trial.

Defendant challenges the offer and admission of Exhibit 8, a photograph of an apparent minor girl having sexual intercourse with an adult male. The photograph formed the basis of count 8, which charged that defendant attempted to transmit child pornography, a violation of 18 U.S.C. § 2252. Defendant argues that the court erred in admitting the photograph, because the girl was actually a young adult. Thus, he claims, the photograph was not child pornography, and its admission was unfairly prejudicial. Defendant further argues that the prosecutor engaged in misconduct by using the photograph at trial.

Contrary to defendant's assertions, the photograph was properly admitted since it was direct evidence of how defendant attempted to entice a minor to have sex. Moreover, the

24

government did not falsely claim the photograph was child
pornography, or otherwise use the exhibit improperly.

> i.   The Court Did Not Abuse Its Discretion In
>      Admitting The Photograph.

> a.   Standard of Review.

The district court had "wide latitude" in balancing the
probative value of evidence against its prejudicial effect.
United States v. Kinslow, 860 F.2d 963, 968 (9th Cir. 1988),
cert. denied, 493 U.S. 829 (1989). "An appellate court will not
reengage in a balancing of the probative value and prejudicial
effect." Rogers v. Raymark Industries, Inc., 922 F.2d 1426, 1430
(9th Cir. 1991). The district court's determination should
instead be upheld absent a clear abuse of discretion. Id.
Reversal is appropriate only if this court has "a definite and
firm conviction that the district court committed a clear error
of judgment." United States v. Benavidez-Benavidez, 217 F.3d
720, 723 (9th Cir.), cert. denied, 531 U.S. 903 (2000).

> b.   The Photograph Was Direct Evidence Of
>      Defendant's Enticement, And Was Not Unduly
>      Prejudicial.

At trial, defendant claimed that the admission of
Exhibit 8 would unfairly inflame the jury by suggesting that
defendant was interested in child pornography. TR. 2-118-120.
The government responded that the photograph was "highly
relevant" evidence of how defendant tried to entice a minor to
have sex. The court admitted the photograph, finding it

25

"relevant to Count 1 ... [and] that the probative valuable [sic]
outweighs any prejudice[.]"   ER 35-36.

          The court did not abuse its discretion.   Exhibit 8 was
direct evidence of defendant's attempted enticement.   Defendant
sent the picture to Mandy, stating it was his favorite, since he
liked "younger girls."   SER 11.   The picture showed an apparent
minor having sex with an adult male, and bore a file title
referencing "Mandy," the same name as defendant's intended
victim.   Defendant then suggested that he and Mandy have sex:
noting that "I thought you were the Mandy in the pic of the
dare," defendant said, "I hope that me and you can be together
before you turn 18."   Id.; TR. 2-126.   Defendant thereby used the
photograph to suggest sexual conduct to Mandy, and to overcome
her inhibitions.[19]   The photograph was an "instrumentality" of
the charged enticement office, and highly relevant.   Cf. United
States v. Yazzie, 59 F.3d 807, 811-12 (9th Cir. 1995)(lewd
magazines and penis enlargement pump admissible as
instrumentalities of sexual abuse of victim).[20]

_____

     [19]   Defendants in other cases have similarly used sexually
explicit photographs to entice minors to have sex.   See, e.g.,
United States v. Orrega, 363 F.3d 1093 (11th Cir. 2004); United
States v. Garrett, 190 F.3d 1220, 1223 (11th Cir. 1999)
(sentencing enhancement justified where defendant sent photograph
of child having sex with adult, with suggestion that they engage
in similar conduct); and United States v. Canada, 110 F.3d 260,
263 (5th Cir.), cert. denied, 522 U.S. 875(1997)(same).

     [20]   Defendant does not seriously challenge the relevancy of
the photograph.   He instead simply claims that it "defies common

26

Nor was the photograph's probative value substantially outweighed by its prejudicial effect. "Evidence is unfairly prejudicial if it 'makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant <u>wholly apart from its judgment as to his guilt or innocence of the crime charged</u>.'" <u>Yazzie</u>, 59 F.3d at 811, quoting <u>United States v. Johnson</u>, 820 F.2d 1065, 1069 (9th Cir. 1987)(emphasis in original). Here, the photograph was an instrument of defendant's enticement, and not tangential to his guilt or innocence. Moreover, defendant cannot show any substantial prejudice from the photograph, particularly given the other graphic evidence admitted at trial.[21]  The photograph thus was properly admitted. Cf. <u>United States v. Boyd</u>, 610 F.2d 521 (8th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1089 (1980)(sexually explicit photographs

---

sense and simple logic" to find the photograph relevant, without addressing the context in which it was sent. Opening Brief at 41.

[21]  In the chat logs, defendant graphically described his interest in (1) having sex with minors, (2) obtaining a picture of Mandy with her thumb in her private parts, (3) rape, (4) bondage, (5) fisting, and (6) virtually every type of sexual intercourse.  The jury also considered obscenity charges based on images of defendant's aroused anatomy, and of a girl engaged in a sex act with a dog.  Under the circumstances, defendant cannot show that the admission of Exhibit 8 (which in any event was relevant) inflamed the jury.  On the contrary, the jury showed its ability to consider the evidence impartially, as demonstrated by its acquittal on one of the obscenity counts.

admitted in Mann Act case); and United States v. Harris, 534 F.2d
207 (10th Cir. 1975), cert. denied, 429 U.S. 941 (1976)(same).

> ii. It Was Not Prosecutorial Misconduct To Use The
> Photograph.

> a. Standard of Review.

Where defendant objected to acts of alleged
prosecutorial misconduct at trial, the claim is reviewed for
harmless error. United States v. Sanchez, 176 F.3d 1214, 1218
(9th Cir. 1999). A claim of prosecutorial misconduct is reviewed
in the context of the entire trial, and reversal is warranted
only if the misconduct probably had a material effect on the
verdict. United States v. Christophe, 833 F.2d 1296, 1300-01
(9th Cir. 1987).

> b. The Prosecutor Did Not Make Improper Use Of
> The Photograph.

Defendant argues that the prosecutor committed
misconduct in his use of Exhibit 8. Defendant argues that the
government should not have offered the exhibit as it was not
child pornography. As previously noted, however, the photograph
was evidence of the attempted enticement offense. Since the
photograph was highly relevant to the primary charge in the case,
it was not misconduct for the prosecutor to offer it.

Similarly unavailing are defendant's claims that the
prosecutor (1) "misled" the jury into believing that the
photograph was child pornography, and (2) used the photograph

28

unfairly to bolster his argument that defendant wanted to have sex with a minor. In reviewing these claims, a brief review of the proceedings of the exhibit may prove helpful. Exhibit 8 formed the basis for Count 8, which charged that defendant attempted to transmit child pornography. The charge was based both on the youthful appearance of the girl having sex, and on defendant's post-arrest admissions that he thought she was a minor. TR. 3-159.[22]

On the night before opening statements, at 10:30 p.m., defendant filed a motion arguing that the female in Exhibit 8 was an adult. CR 98. Defendant sought a ruling that the photograph was not child pornography, or a judgment of acquittal on Count 8. After receiving the motion, the government did not claim the picture was child pornography. The government instead argued that it could sustain the charge of attempted distribution of child pornography if it proved that defendant knowingly

_____

[22] Defendant told agents he believed the female was "under the age of 18," and that he sent it to Mandy as "she had requested images of girls her age." TR. 3-159. Defendant's belief about the female's age was not unreasonable. At trial, the defense called Melinda Bertsch, the adult model depicted in Exhibit 8. Bertsch said she was 20 years old when the picture was taken. TR. 5-98, 102. Bertsch maintained an adult website which said she had the "flattest chest in the business." TR. 5-104-5. Bertsch also appeared in a movie called "Young and Anal 15." She admitted looking "very, very young," and implied that men might believe her to be a minor. According to Bertsch, "if men look at me and fantasize that I'm younger than I am, I feel that's better than if they were just looking at some young girl." TR. 5-105.

29

transmitted an image which he <u>believed</u> was child pornography.
The government also argued that, regardless of whether the
photograph was child pornography, it was independently relevant
to prove Count 1.

The court heard brief argument immediately before
opening statements, reserved ruling, and invited the government
to submit authorities supporting its position.[23]  During opening
statement, the government made brief reference to the exhibit,
noting that it "appear[ed] to be a young girl having sex with an
older man,"  TR. 2-22, and that defendant said he <u>thought</u> the
picture was child pornography.  TR. 2-25.[24]  During his opening,
defense counsel said the photograph was of "adult professional
porn actors," and not minors.  TR. 2-35.  The government

_____

[23]  The government later filed a memorandum citing numerous
cases where attempt convictions were affirmed, even in the face
of "factual impossibility" defenses.  CR 101.  In <u>United States
v. Quijada</u>, 588 F.2d 1253 (9th Cir. 1978), for example, a
defendant was convicted of attempted distribution of cocaine,
even though he actually distributed soap.  This court affirmed
based on defendant's belief that he was distributing cocaine,
noting, "[G]enerally a defendant should be treated in accordance
with the facts as he supposed them to be."  <u>Id.</u> at 1255.  <u>See
also</u>, <u>United States v. Bagnariol</u>, 665 F.2d 877, 895-97 (9th Cir.
1981), <u>cert. denied</u>, 456 U.S. 962 (1982)(factual impossibility
not defense to attempted Hobbs Act offense where defendant
intended to violate the law); <u>United States v. Crow</u>, 164 F.3d
229, 235 (5th Cir.), <u>cert. denied</u>, 526 U.S. 1160 (1999)(factual
impossibility not a defense "if the crime could have committed
had the attendant circumstances been as the actor believed them
to be"); and <u>United States v. Bilderbeck</u>, 163 F.3d 971, 975 (6th
Cir.), <u>cert. denied</u>, 528 U.S. 844 (1999)(same).

[24]  Defense counsel did not object to these statements.

subsequently offered the exhibit through SA Waters, and the court admitted it, noting that "there is evidence that [defendant] thought that she was a minor and it does seem relevant to Count 1." ER 29.

At the close of the evidence, the court granted a judgment of acquittal on Count 8. Noting that the law was "unsettled," TR. 5-108, and that the decision was "difficult," TR. 5-120, the court reasoned that an attempted distribution charge could not be sustained unless the picture was of a real child.[25]  The court thus removed Count 8 from the jury's consideration. Defendant now claims that, in light of the dismissal, the admission of Exhibit 8 tainted the verdict on the remaining counts. But there was no prejudicial spillover, as the exhibit was properly admitted on the enticement charge. <u>United States v. Cross</u>, 308 F.3d 308, 318 (3d Cir. 2002)(taint finding requires the presence of evidence admitted to support invalid counts, and inadmissible on remaining counts).

---

[25]  Defendant suggests that the court dismissed the count because it felt the photograph was highly prejudicial. Opening brief at 42.  That is not so.  The court dismissed the count because it felt that the government had to prove the photograph was actual child pornography to sustain even an attempted distribution charge.  The government respectfully submits that this ruling was erroneous, because defendant had the requisite criminal intent.  Although the propriety of the ruling is not before this court, the government provides this recitation to show that it was never misled the court about the content of the picture.  Instead, it simply pursued, in good faith, a legally tenable charge which was later dismissed.

31

Defendant alternatively suggests that the prosecutor falsely claimed Exhibit 8 was child pornography. Defendant does not, however, cite a single instance where the government said the exhibit was child pornography. On the contrary, during rebuttal argument, the government made it clear that the picture showed "Melissa, the adult porn star." TR. 6-92-93 (emphasis added). There is no basis for suggesting that the government misled the court or jury into thinking that Exhibit 8 constituted actual child pornography.

Nor did the government use the exhibit improperly to argue that defendant wanted to have sex with a 15-year-old minor. The government did not mention Exhibit 8 during its closing argument. When defense counsel brought up the photograph in his closing argument, seemingly to suggest entrapment, TR. 6-75-77, the government said defendant sent the photograph to Mandy only because she asked for pictures of people her own age. Defendant thought the girl in the photograph was a minor; the fact that he sent it to Mandy thus showed he thought she was a minor as well, which was an essential element of the enticement offense. The prosecutor thus argued that the picture was evidence that defendant intended to have sex with a minor, as was also shown by his statements that he had been with 13-year-old girls, knew how

32

to teach virgins, and would take things "slow and easy."  TR. 6-
93.[26]

     In short, the prosecutor never falsely claimed that the
woman in Exhibit 8 was a minor.  The prosecutor was instead
candid with both the court and jury.  The use of the photograph
did not constitute prosecutorial misconduct.[27]

     D.   The District Court's Sentencing
          Determinations Did Not Constitute Plain
          Error Requiring A Remand.

          i.   Introduction.

     Defendant was sentenced on January 27, 2004, under the
sentencing guidelines.  The United States Supreme Court
subsequently decided Blakely v. Washington, __ U.S. __, 124 S.Ct.
2531 (2004), where it held that a Washington state sentencing
regime allowing for sentencing enhancements based on judicial
fact-finding violated a defendant's Sixth Amendment rights.
Blakely held that a defendant could instead be exposed only to
the maximum sentence authorized by a jury's verdict, or facts
admitted by him.  In United States v. Ameline, 376 F.3d 967 (9th
Cir. 2004)("Ameline I"), superseded, __ F.3d __, 2005 WL 350811

-------------------

     [26]  Defendant did not object to this argument, as it was
obviously proper as to the enticement charge.

     [27]  Defense counsel's appellate claim is ironic, since he
told the district court at sentencing that the prosecutor "has
always been very careful to point out both pro and con in his
memoranda for which we obviously feel that he has, you know,
exercised the greatest of prosecutorial responsibility and we
thank him for that."  ER 99.

33

(Feb. 9, 2005), this court extended Blakely to the federal
sentencing guidelines. In his opening brief, defendant cites
Blakely and Ameline I for the proposition that the use of
sentencing enhancements based on judicially found facts violated
his due process rights, and thus requires a remand of this case.
After defendant's brief was filed, the Supreme Court decided
United States v. Booker, ___ U.S. ___, 125 S.Ct. 738, which
addressed Blakely issues. Booker held that Blakely's reasoning
applies to the federal sentencing guidelines, and that the
application of sentencing enhancements based on facts not
determined by a jury, or admitted by a defendant, thus violates
the Sixth Amendment. In deciding what remedy to apply, the
Supreme Court rejected the suggestion that the Sixth Amendment
procedures required by Blakely could be engrafted onto the
guidelines. The Court instead invalidated the two provisions of
the Sentencing Reform Act making the guidelines mandatory, and
upheld the remainder of the Act. 125 S.Ct. at 756-68. So
modified, the court concluded, the Act "makes the Guidelines
effectively advisory." Id. at 757.

Booker further held that the district courts, "while
not bound to apply the Guidelines, must consult those Guidelines
and take them into account when sentencing." Id. at 767. The
district courts must consider the guidelines "sentencing range
established for ... the applicable category of offense committed

34

by the applicable category of defendant." Id. at 764, quoting 18
U.S.C. § 3553(a)(4). The sentence should reflect the seriousness
of the offense, promote respect for the law, provide just
punishment and adequate deterrence, and protect the public. Id.
Booker further held that sentencing decisions may still be
appealed, and that appellate courts should review sentences for
"unreasonableness," with reference to the factors specified in 18
U.S.C. § 3553(a). Id. at 764-67.

The Supreme Court explicitly held Booker applicable to
cases pending on direct appeal, but noted:

> That fact does not mean that we believe
> that every sentence gives rise to a Sixth
> Amendment violation. Nor do we believe that
> every appeal will lead to a new sentencing
> hearing. That is because we expect reviewing
> courts to apply ordinary prudential
> doctrines, determining, for example, whether
> the issue was raised below and whether it
> fails the "plain-error" test.

Id. at 769.

In United States v. Ameline, __ F.3d __, 2005 WL 350811
(9th Cir. Feb. 9, 2005)("Ameline II"), this court dealt with a
plain error analysis under Booker. The court found that, where a
defendant's sentence was based on judicial fact-finding, it was
plain error for him to receive a sentence which "far exceeded the
maximum sentence" authorized by a jury's verdict or the
defendant's admissions. This court remanded the case for
resentencing, noting that only a "truly exceptional case ... will

35

not require remand for resentencing under the new advisory guideline regime." 2005 WL 350811 at *6. (emphasis in original)

The government submits that this is a "truly exceptional" case where no plain error occurred. The court correctly calculated the guideline range. With the exception of an obstruction of justice enhancement, all enhancements were based not only on judicial fact-finding, but also the jury's verdict. The court denied a motion for downward departure, even though it knew it could depart below the applicable range. The court instead sentenced at the highest level within the range, stating that it was necessary to punish defendant and protect the public. Defendant thus cannot show that the court would have imposed a lesser sentence had it known that the range was advisory.

ii. Standards of Review.

The new standard of review for the validity of a sentence is whether it is reasonable. Booker, 125 S.Ct. at 765-66. As defendant failed to raise a Sixth Amendment objection in the district court, his present claims are reviewed for plain error. Plain error requires: (1) an error, (2) that was plain, and (3) that affected the defendant's substantial rights. See United States v. Olano, 507 U.S. 725, 732 (1993); United States v. Franklin, 321 F.3d 1231, 1240 (9th Cir.), cert. denied, 540 U.S. 858 (2003). Even if those conditions are met, reversal is

36

discretionary and should be granted only if the error "seriously
affects the fairness, integrity, or public reputation of judicial
proceedings." Olano, 507 U.S. at 732 (citation, alteration, and
internal quotations omitted); see also, Johnson v. United States,
520 U.S. 461, 466-67 (1997).

The district court's factual findings are reviewed for
clear error. Maine v. Taylor, 477 U.S. 131, 145 (1986)("the
'clearly erroneous' standard of review long has been applied to
nonguilt findings of fact by district courts in criminal cases").
The district court's legal interpretation of the sentencing
guidelines is reviewed de novo. United States v. Melendrez, 389
F.3d 829, 831 (9th Cir. 2004).[28]  The court's assessment of prior
convictions and criminal history calculations are also reviewed
de novo. United States v. Dominguez, 316 F.3d 1054, 1056 (9th
Cir. 2003).

> iii. The District Court's Sentencing
> Guideline Determinations Were Not
> Factually Or Legally Erroneous.
>
> a. The Application Of The Sentencing
> Guideline For Sexual Abuse Of A Minor.

Defendant was convicted of attempted enticement of a
minor for prohibited sexual conduct, a violation of 18 U.S.C.
§ 2422(b). The starting guideline for that offense was U.S.S.G.

---

[28]  As Booker does not explicitly alter the standards of
review for sentencing guideline determinations, the government
will apply those established standards here.

37

§ 2G1.1.  See U.S.S.G., Appendix A (2003 ed.).  That section
covers a variety of offenses involving the promotion of
prostitution and other prohibited sexual conduct.  For offenses
not involving prostitution, U.S.S.G. § 2G1.1(c)(3) contains three
cross-references to other guideline provisions: (1) an offense
involving the production of child pornography is sentenced under
U.S.S.G. § 2G2.1; (2) an offense involving "criminal sexual
abuse," as defined in 18 U.S.C. § 2241 or § 2242, is sentenced
under U.S.S.G. § 2A3.1; and (3) an offense not covered by the
foregoing provisions is sentenced under U.S.S.G. § 2A3.2 if it
involves sexual abuse, or attempted sexual abuse, of a minor
under the age of 16, or under § 2A3.4 if it involved abusive
sexual contact.

        "Where a sentencing court is required to choose among
multiple guideline sections, it should 'use the guideline most
appropriate for the offense conduct charged in the count of which
the defendant was convicted.'"  United States v. Miranda, 348
F.3d 1322, 1324 (11th Cir. 2003), quoting U.S.S.G. Appendix A,
introductory comment.  In this case, the cross-references to
§§ 2G2.1 and 2A3.1 were inapplicable.[29]  The question thus became

_____

        [29]  U.S.S.G. § 2G2.1 was inapplicable because defendant did
not produce child pornography.  Section 2A3.1 would apply only
"if the offense involved criminal sexual abuse ... as defined in
18 U.S.C. § 2241 or § 2242."  See U.S.S.G. § 2G1.1, application
note 10.  Those sections required the use of force or threats,
and thus were inapplicable.

whether to apply § 2A3.2 (attempted sexual abuse of a minor under 16 years of age), or § 2A3.4 (attempted sexual contact).

The district court applied U.S.S.G. § 2A3.2 "because the offense involved the defendant's attempt to commit sexual abuse of a minor under the age of 16." TR. 1/20/04 at 6-10; ER 51-55.[30] The court's language tracked U.S.S.G. § 2A3.4(c)(2), which makes § 2A3.2 applicable if the offense involved an "attempt to commit criminal sexual abuse of a minor." The term "criminal sexual abuse" is defined in 18 U.S.C. § 2243(a) as including any "sexual act" with a person between the ages of 12 and 16 years. Thus, if defendant's conduct consisted of an attempted "sexual act" with his intended victim, § 2A3.2 applied; if the conduct amounted to attempted "sexual contact," then § 2A3.4 applied. Miranda, 348 F.3d at 1325-26.

By its verdict, the jury found that defendant attempted to have a "sexual act" with a minor. The jury was instructed that, in order to convict, it had to find that defendant intended sexual activity "of a type for which someone could be charged with a criminal offense under Hawaii state law." TR. 6-102. The

---

[30]    Defendant does not directly challenge the substance of this factual finding. Defendant instead argues that § 2A3.2 could not be applied because it required judicial fact-finding in violation of Blakely. This argument has been foreclosed by Booker, which allows the court to make findings germane to the advisory guideline range. In any event, as will be shown below, the jury's verdict also established that defendant intended to commit sexual abuse of a minor, thereby justifying the application of § 2A3.2.

39

jury was instructed that a person commits the Hawaii state offense of sexual assault in the first degree if he knowingly engaged in "sexual penetration" with a person between the ages of 14 and 16 years, provided that the defendant was more than five years older than, and not married to, the minor.[31]  By convicting defendant of Count 1, the jury necessarily found that he intended "sexual penetration" with a minor between the ages of 14 and 16 years.  Each of the acts constituting "sexual penetration" under Hawaii law also constituted a "sexual act" under 18 U.S.C. § 2246.[32]

The jury's verdict (and the court's factual finding) were well supported by the evidence.  When told Mandy was 15, defendant said he liked her age.  Defendant told Mandy he wanted to engage in various sexual acts, including oral sex, vaginal sex and fisting.  Defendant then met Mandy at the airport with condoms.  Given this evidence, defendant intended a sexual act with a minor, and U.S.S.G. § 2A3.2 applied.  See, e.g., United States v. Panfil, 338 F.3d 1299, 1302-3 (11th Cir. 2003)(§ 2A3.2

_____

[31]  The jury was instructed that "sexual penetration" includes "vaginal intercourse, anal intercourse, fellatio, cunnilingus, analingus, deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening of another person's body."  TR. 6-104.  Each of these acts also constitutes a "sexual act" under 18 U.S.C. § 2246.

[32]  18 U.S.C. § 2246 defines "sexual act" as including contact between the penis and the vulva, mouth or anus.

40

applicable because defendant's intent to have oral sex with 13-year-old girls constituted an attempted "sexual act"); United States v. Miranda, 348 F.3d 1322 (§ 2A3.2 applied to 18 U.S.C. § 2422 conviction); and United States v. Root, 296 F.3d 1222 (11th Cir. 2002), cert. denied, 537 U.S. 1176 (2003)(same).[33]

         b.   The Enhancement For Use Of A Computer.

         Defendant challenges the two level sentencing enhancement under U.S.S.G. § 2A3.2(b)(3)(A) for use of a computer during the enticement offense. Defendant found Mandy through a Yahoo profile, and had numerous on-line chats. The bulk of the trial evidence consisted of transcripts of their chats. The jury was instructed that, in order to find defendant guilty, it had to find that "defendant used the Internet" to attempt to persuade a minor to have sex. TR. 6-102. The evidence and the jury's verdict support the applicability of the enhancement. United States v. Mitchell, 353 F.3d 552, 559 (7th Cir. 2003); United States v. McGraw, 351 F.3d 443 (10th Cir. 2003), cert. denied, 124 S.Ct. 2406 (2004)(enhancement applied in case involving undercover agent, because "would-be-predators, sheltered by the

_____

[33] In his brief, defendant makes passing reference to the applicability of U.S.S.G. § 2G3.1, which covers obscenity offenses. While defendant was convicted of five obscenity offenses, they were grouped with the enticement offense set forth in Count 1. See PSR, para. 53. Since the enticement offense was the "most serious" of the counts, its offense level was correctly applied. Defendant's attempt to use the lower obscenity offense level is thus entirely misplaced.

41

internet's anonymity, can search nationally, or even globally, for victims willing to satisfy their particular lusts").

c.    The Obstruction Of Justice Enhancement.

U.S.S.G. § 3C1.1 provides for a two level enhancement if the defendant willfully obstructed, or attempted to obstruct, the administration of justice during the prosecution of the case. The giving of perjurious testimony may constitute an obstruction of justice where the testimony is (1) false, (2) on a material matter, and (3) done with willful intent. See United States v. Ancheta, 38 F.3d 1114, 1118 (9th Cir. 1994), citing United States v. Dunnigan, 507 U.S. 87 (1993); U.S.S.G. § 3C1.1 application note 4(b).

During his testimony, defendant admitted: (1) communicating with Mandy, who said she was 15; (2) using sexually explicit language; (3) buying a ticket for her to travel from Oahu to Maui; and (4) going to the airport with handcuffs and condoms in his pocket. Defendant denied, however, intending to have sex with a minor, claiming it was instead just a cyber game. Defendant also offered exculpatory explanations for certain incriminating evidence, such as the condoms, handcuffs and ropes on his bed, which he had previously said could be used for bondage.

The jury rejected defendant's explanations, and found him guilty. The court found that defendant attempted to obstruct

42

the prosecution "by providing materially false testimony while under oath at trial." ER 50. The court noted the conflict between the government's evidence and defendant's testimony. It found defendant's false testimony was material, because the jury would have acquitted had it believed him. This finding was not clearly erroneous. Cf. Ancheta, 38 F.3d at 1117-18.

> d. The Denial Of A Reduction For
> Acceptance Of Responsibility.

U.S.S.G. § 3E1.1(a) provides for a two level reduction if defendant "clearly demonstrates acceptance of responsibility for his offense[.]" One piece of "significant evidence" to be considered is whether a defendant makes a truthful admission of the elements of the offense. United States v. Scrivener, 189 F.3d 944, 948 (9th Cir. 1999), citing U.S.S.G. § 3E1.1, application note 3. A defendant's attempt to minimize his own involvement in the offense weighs against a finding of acceptance of responsibility. Id. Similarly, conduct resulting in an enhancement for obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, application note 4.

A district court's determination of acceptance of responsibility should be given great deference. Scrivener, 189 F.3d at 947-48. In this case, defendant's false exculpatory testimony was rejected by the jury. Following the conviction, defendant told the Probation Office that he regretted playing

43

"these stupid games," and apologized for his conduct.  PSR at 3A.
Defendant did not, however, admit the essential elements of the
offense.  He instead continued to deny intending to have sex with
a minor.  In short, defendant said he was sorry, but refused to
admit he committed a crime.  Based on defendant's perjurious
testimony, and his denial of the elements of the offense, the
court found that defendant had not accepted responsibility for
his offense.  This finding was not clearly erroneous.  Cf.
Scrivener, 189 F.3d at 948-49 (court not required to credit a
defendant's "cursory expressions of contrition"); and United
States v. Fleming, 215 F.3d 930 (9th Cir. 2000)(acceptance of
responsibility denied where defendant denied element of offense).

> e.   The Determination Of Defendant's Criminal
>      History Category.

The district court determined that defendant had three
countable convictions: (1) a 1992 DUI conviction in Wyoming,
(2) a 1992 DUI conviction in Utah, and (3) a 1993 stalking
conviction in Wyoming.  The three convictions resulted in the
assessment of four criminal history points, which translated into
a criminal category III.[34]  Defendant now challenges the
assessment of one point for the Utah DUI conviction, and two
points for the Wyoming stalking conviction.  As defendant raised

---

[34]     Defendant had 21 other convictions that were too old to
be counted.  ER 150.  They included convictions for burglary
(2x), misappropriation of property, DUI (2x), and sundry traffic
offenses.  PSR, paras. 71-73.

44

those objections below, his claims are reviewed de novo. United States v. Dominguez, 316 F.3d 1054, 1056 (9th Cir. 2003).[35]

### a)    The Utah DUI conviction

The PSR recited that defendant was convicted of DUI on March 1, 1993, but that the details of the offense were no longer available. PSR para. 68. Defendant said he had been unrepresented in the case, and did not recall waiving his right to counsel. The Probation Department obtained a certified notice from the Utah court indicating that defendant entered his plea only after being fully advised of his rights. Id. At sentencing, defendant objected to the use of the certified notice as evidence of his waiver of counsel. PSR, addendum 1 at 3A. The court found the notice sufficient to show a valid waiver, and assessed one criminal history point for the conviction. ER 75.[36]

Defendant argues that the court erred by counting an uncounseled conviction, particularly given the incomplete court records. This claim is unavailing. There is a presumption of regularity attached to final judgments, "even when the question

---

[35]    In his brief, defendant argues that the district court's calculation of his criminal history score violated his Sixth Amendment rights under Blakely. As that argument has been foreclosed by Booker, the government will address the substance rather than procedure of the court's rulings.

[36]    See U.S.S.G. § 4A1.1.(c)(one criminal history point assessed for each prior sentence of less than sixty days incarceration).

45

is waiver of constitutional rights." United States v. Mulloy, 3 F.3d 1337, 1339 (9th Cir. 1993), quoting Parke v. Raley, 506 U.S. 20, 29 (1992). Once the government established the fact of the conviction, defendant had the burden of proving its alleged invalidity. United States v. Dominguez, 316 F.3d at 1056. A defendant may not carry his burden "merely by pointing to a silent or ambiguous record." Id., quoting Mulloy, 3 F.3d at 1339.

Defendant here failed to prove the invalidity of his conviction. Defendant offered no evidence, other than the unsupported claim that he did not remember waiving counsel. The court appropriately relied upon the certified decree of the Utah court to conclude otherwise. Cf. United States v. Strange, 102 F.3d 356, 362 (8th Cir. 1996)("bare bones, single sentence argument unsupported by authority" insufficient to demonstrate infirmity of conviction). Nor did it matter that the Utah court records were incomplete. United States v. Roach, 164 F.3d 403 (8th Cir. 1998), cert. denied, 528 U.S. 845 (1999)(absence of records underlying a conviction not enough to create presumption of irregularity). The district court appropriately counted the conviction.

### b) The Wyoming stalking conviction

The court assessed two points under U.S.S.G. § 4A1.1.(b) for defendant's stalking conviction in Wyoming, after

46

finding that defendant received a "sentence of imprisonment" of at least 60 days.  Defendant argues that, although he was sentenced to 60 days, the Wyoming court effectively suspended the sentence, such that only one criminal point should have been assessed under U.S.S.G. § 4A1.1.(c).

Contrary to defendant's assertions, the Wyoming court imposed a 60-day jail term, and no portion was suspended.  On May 19, 1993, the Uinta County Court in Evanston, Wyoming entered judgment on the stalking offense, and three traffic offenses.  The judgment on the stalking charge (Count 4) provided that:

> [T]he Defendant shall serve a term of 60 days in the Uinta County Jail; however, 0 [days] of said jail term shall be suspended.

(emphasis added).  SER 51-52.[37]  The judgment also imposed terms of unsupervised probation, with the probation on the stalking offense to run consecutively to probationary terms imposed on the traffic offenses.[38]  Id.  The judgment also ordered defendant to pay $320 in court costs by September 1, 1993.  SER 52.

---

[37]  The Wyoming court file was attached as an exhibit to a January 22, 2004 memorandum filed by the government.  CR 141.  The pertinent portions of the file are included within the SER.

[38]  Defendant received probationary terms of 90 days (Count 1) and 6 months (Counts 2 and 3), which were to run concurrently with each other.  Defendant also received a probationary term of 6 months on Count 4 (the stalking conviction), which was to run consecutively to the other terms.  The net effect was that defendant was on probation for one year.  SER 54.

47

In the "Other Terms" section of the judgment, the court imposed the following conditions:

> (3) jail term on count 4 to begin 3-20-93 [sic][39] and will be suspended if probation successfully completed;
>
> (4) credit for one (1) day time on all jail terms;
>
> . . . .
>
> (7) report to the court on 3-19-93 [sic] to confirm jail sentence or suspension thereof.

SER 54.

In short, on May 19, 1993, defendant was sentenced to begin serving a 60-day jail term on March 20, 1994. Defendant was given credit for one day which he had spent in custody.[40] The balance of the jail term would be suspended _if_ defendant successfully completed an unsupervised probationary term, and paid court costs. Defendant was ordered to appear on March 19, 1994 to determine whether he had successfully completed probation, and whether the balance of the jail term would be suspended.

---

[39] The March 20, 1993 date was an obvious clerical error, as the judgment was entered on May 19, 1993. This is demonstrated by the clerk's notes of the May 19, 1993 hearing, which state, "jail begin 3-20-94." SER 55 (emphasis added).

[40] The court documents show that defendant was arrested on May 18, 1993 at 9:00 p.m., and had a hearing the following day. SER 57-59. The jail credit appears to be for the night he spent in custody.

48

Defendant failed to pay his court costs.  On September 7, 1993, the State of Wyoming thus moved to revoke his probation.  SER 60-64.  The State characterized the judgment as requiring defendant "to serve a term of eighty (80) days in the Uinta County Jail but said jail sentences to be purged if the Defendant completed a total of one (1) year period of unsupervised probation."  SER 60-61.[41]  The State further alleged that defendant had failed to pay court costs as required by the judgment.  SER 61.

A summons was initially issued for defendant's appearance.  On September 30, 1993, an arrest warrant was issued when the sheriff could not locate defendant and serve him with the summons.[42]  SER 65-66.  On February 13, 1996, the State of Wyoming withdrew its motion for revocation of probation because officers could not find defendant.  The court granted the motion and quashed the arrest warrant.  The order did <u>not</u>, however, suspend the 60-day term of imprisonment which had been imposed, or otherwise vacate or modify the judgment.  SER 65-68.

Under U.S.S.G. § 4A1.1(b), defendant was to be assessed two criminal history points for "each prior sentence of

---

[41]   The 80-day term appears to consist of the two 10-day terms on the traffic offenses, and the consecutive imposition of the 60-day term on the stalking offense.  SER 52.

[42]   Defendant moved to Maui in 1993, PSR paras. 79-82, apparently without satisfying his Wyoming court obligations.

49

imprisonment of at least sixty days[.]"  U.S.S.G. § 4A1.2(b) defines "sentence of imprisonment" as follows:

> (1)  The term "sentence of imprisonment" means a sentence of incarceration and refers to the maximum sentence imposed.
>
> (2) If part of a sentence of imprisonment was suspended, "sentence of imprisonment" refers only to the portion that was not suspended.

Application note 2 to the guideline further states: "To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence[.]"

The district court reviewed the Wyoming papers and concluded that a 60-day sentence had been imposed, and "it was only going to be suspended if Mr. Schnepper appeared and if he had successfully completed probation and if he had paid his fines."  ER 117.  The court then concluded that no portion of the sentence had been suspended, and that defendant had served one day in jail.  The court thus imposed two criminal history points.

> [T]he sentence of six months unsupervised probation and 60 days jail is considered a valid sentence. No portion of a jail term was ever suspended and the defendant had served one day of jail with a balance of 59 days outstanding at the time the case was closed.  Therefore the sentence of 60 days jail pronounced by the court is controlling in determining whether it qualifies as a sentence of imprisonment under 4A1.1(b).

ER 134.

The court's ruling was not erroneous.  The Wyoming judgment imposed a 60-day term of imprisonment, and gave

50

defendant credit for one day already served. The sentence was a
"sentence of imprisonment" since defendant "actually served a
period of imprisonment on such sentence[.]" U.S.S.G. § 4A1.2,
note 2. The sentence was also for a term "of at least sixty
days" within the meaning of U.S.S.G. § 4A1.1(b), since "criminal
history points are based on the sentence pronounced, not the
length of time actually served." Id. Two criminal history
points thus were warranted. Cf. United States v. Shinners, 892
F.2d 742, 743-44 (8th Cir. 1989)(length of sentence imposed
dispositive for guideline purposes); and United States v.
Schomburg, 929 F.2d 505, 507 (9th Cir. 1991)(sentence pronounced
at outset dispositive on whether it was "sentence of
imprisonment").

Defendant attacks the court's finding, arguing that his
"term of unsupervised probation was completed successfully
because the State of Wyoming withdrew its motion for revocation
of probation, in effect suspending the jail term of
imprisonment." Opening Brief at 29.[43] Defendant cites no
authority for this novel proposition. Moreover, defendant's
argument is wrong from a policy standpoint, as he seeks to be

---

[43] This appellate argument is contradicted by defense
counsel's concession at sentencing that defendant had not
successfully completed his probation. The court asked counsel:
"Are you arguing, [counsel], that Mr. Schnepper successfully
completed his probation? Is that the argument you're making?"
Defense counsel responded, "No, Your Honor ..." ER 82.

rewarded for his blatant disregard of the Wyoming judgment.
Defendant knew he was supposed to appear the day before his jail
term began, to determine whether his fine had been paid and his
jail term suspended.  Knowing full well of his obligations,
defendant ignored them.  He did not pay his fines, appear at the
hearing, or go to the county jail.  He instead moved to Maui.
The State of Wyoming sought to bring him to justice, but was
unsuccessful.  Defendant now suggests that the sentence should be
deemed "suspended" just because the State of Wyoming stopped
looking for him, and closed the case.  As the district court
noted, it would be inequitable indeed to reward defendant for his
disrespect for the law.[44]  Cf. United States v. Thompson, 925
F.2d 234 (8th Cir. 1991)(imposed but unexecuted sentenced counted
as a "sentence of imprisonment" even though defendant never went
to jail, where authorities failed to pick up defendant and
sentence not "affirmatively suspended"); and United States v.
Pearson, 312 F.3d 1287, 1289 (9th Cir. 2002), amended, 321 F.3d
790 (9th Cir. 2003)("No one should profit from his legal wrong").
The 60-day jail term was never suspended, and thus two criminal
history points were proper.

---

[44]   The court said "defendant should not benefit from his
wrongdoing in failing to show up and in failing to successfully
complete his unsupervised probation."  ER 135.

c)   Defendant Cannot Show That The Court
Would Have Sentenced Him To A Lesser
Term Had It Known That The Guidelines
Were Advisory Rather Than Mandatory.

Since defendant did not assert constitutional
objections to his sentencing, his appellate claims are reviewed
for plain error.  As noted above, defendant must demonstrate the
existence of (1) error, (2) which is plain, and (3) that affects
substantial rights.  Johnson v. United States, 520 U.S. at 466-
67.  If he makes such a showing, this court may then exercise
discretion to correct the error if (4) it seriously affects the
fairness, integrity or public reputation of judicial proceedings.
Id.

Defendant presumably can satisfy the first two prongs
of the Johnson test.  In light of the Booker decision, the
imposition of a sentence under the guidelines was arguably error
because the court mistakenly believed that it was required to
impose a sentence within the guideline range.  If this was error,
it was "plain," i.e. "clear" or "obvious."  See Johnson, 520 U.S.
at 467-68 ("where the law at the time of trial was settled and
clearly contrary to the law at the time of appeal [,] it is
enough that an error be 'plain' at the time of appellate
consideration").

Defendant cannot, however, show that the error
"affect[ed] substantial rights" because he cannot demonstrate
that he would have received a different sentence if the

53

guidelines had been advisory rather than mandatory.  <u>See</u> <u>United</u> <u>States v. Dominguez-Benitez</u>, __ U.S. __, 124 S.Ct. 2333, 2339 (2004)(plain error that "affects substantial rights" means "error with a prejudicial effect on the outcome of a judicial proceeding").  The court calculated the base offense level as 25, and defendant's criminal history category at III, which translated into a guideline range of 70-87 months.[45]  ER 135-36. The court then rejected defendant's motion for downward departure, which sought a sentence below the guideline range on approximately ten grounds.[46]  Although the court acknowledged its discretion to grant a departure, it declined to do so, giving its reasons in detail.  ER 144-51.

The court then addressed where within the guideline range to impose sentence.  The court noted the existence of a numerous aggravating factors:  defendant's attempt to obstruct justice, his predatory conduct, his "continued denial of guilt in the face of insurmountable evidence," and his "extensive history

---

[45]  As noted above, those calculations were legally and factually correct, and would result in the same advisory sentencing range after <u>Booker</u>.

[46]  The grounds included (1) vulnerability to victimization and abuse in prison, (2) extraordinary hardship as a child and young adult, (3) post-offense rehabilitation, (4) medical conditions, (5) the need to be immediately eligible for counseling and rehabilitative programs, (6) aberrant behavior, (7) imperfect entrapment, (8) defendant's criminal history category overstated his propensity to commit future crimes, (9) the effect of incarceration on his family business, and (10) a combination of the foregoing factors.  ER 144.

54

of prior convictions."[47]   ER 161-62.   The court noted that defendant had also absconded from a Wyoming state unsupervised probation term, and concluded that defendant "pose[d] a significant danger to society and a high likelihood of recidivism."   ER 162.   After finding that "no mitigating factors ... have been identified," the court imposed a sentence of 87 months, the top of the guideline range:

> [T]he court finds that a sentence at the
> highest end of the applicable guideline range
> is justified to address the sentencing goals
> of punishment and protection of society.

ER 162.

In short, defendant cannot show that the court's sentencing under guidelines which it perceived to be mandatory created an "error with a prejudicial effect on the outcome[.]" Dominguez-Benitez, 124 S.Ct. at 2339.   The guideline range was 70-87 months.   Defendant asked the court to sentence below the range, advancing ten separate grounds for mitigation.   The court said it could sentence below the range, but decided not to do so. The court then sentenced at the absolute top of the range, stating it was necessary for punishment and the protection of society.   Under the circumstances, defendant simply cannot show that the court would have imposed a sentence below the guideline

---

[47]   While defendant had three convictions that counted towards his criminal history category, he had 21 convictions that were not countable.   ER 150, 161-62.

range, had it known the range was advisory. Cf. United States v. Bruce, 396 F.3d 697, 720 (6th Cir. 2005)(no plain error where court "not inclined to impose a shorter sentence despite its power to do so within the guidelines' mandatory sentencing scheme"); and United States v. Rodriguez, __ F.3d __, 2005 WL 272952, at *11 (11th Cir. Feb. 4, 2005)(to establish plain error, pre-Booker defendants must show "reasonable probability" that court would have imposed lesser sentence had it known the guidelines were advisory).

Finally, on the fourth prong of the Johnson test, defendant cannot show that the imposition of the sentence within the guideline range, to which no constitutional objection was made, seriously jeopardized the integrity of judicial proceedings. Defendant received a full and fair hearing under long-standing procedures that had been approved by the Supreme Court and every court of appeals. The imposition of a sentence under binding guidelines, while erroneous in hindsight, was not so "egregious," see United States v. Young, 470 U.S. 1, 15 (1985), as to threaten the fairness, integrity or public reputation of judicial proceedings. On the contrary, the sentence was reasonable in light of the factors set forth in 18 U.S.C. § 3553(a). Such factors, which were endorsed by the Booker court, include having a sentence reflect the seriousness of the offense, promote respect for the law, provide just

56

punishment, afford adequate deterrence, and protect the public. A sentence within the guideline range also conformed to the judgments of the United States Sentencing Commission, which have been developed over nearly twenty years.  See United States v. Wilson, 350 F. Supp. 910, 911 (D. Utah 2005)(since Sentencing Commission has "promulgated and honed the Guidelines" to achieve the purposes of Section 3553(a), "considerable weight should be given to the Guidelines in determining what sentence to impose").

        The government recognizes that this court has just decided Ameline II, which holds that "it is the truly exceptional case that will not require remand for resentencing under the new advisory guideline regime."  2005 WL 350811 at *6.  In Ameline II, the defendant made admissions which authorized a maximum guideline sentence of sixteen months.  Based on judicially found facts, the court sentenced him to 150 months, or approximately nine times the maximum authorized by his admissions.  On those facts, this court declined to inquire into whether the sentence imposed was "reasonable," as now suggested by Booker.  In this case, by contrast, all of the sentencing enhancements except for obstruction of justice were supported by the jury's verdict. Moreover, the obstruction enhancement was based on defendant's trial testimony, which the jury plainly rejected.[48]  The

---

        [48]    Even without the two level enhancement for obstruction, the range would have been 57-71 months.  As defendant received a sentence of 87 months, it did not greatly exceed the maximum

guideline range thus was not dramatically increased by judicial
fact-finding.  Moreover, the court made it abundantly clear it
did not wish to impose a lighter sentence, as it sentenced at the
bottom of the range.  The government thus submits that this case
need not be remanded for resentencing.

VI.  CONCLUSION

        The United States submits that the judgment should be
affirmed in its entirety.

        Dated:  March __10__, 2005, at Honolulu, Hawaii.

                                EDWARD H. KUBO, JR.
                                United States Attorney
                                District of Hawaii

                                By_____
                                  LAWRENCE L. TONG
                                  Assistant U.S. Attorney

_____

authorized by the jury's verdict.

**Certificate of Compliance Pursuant to Fed. R.App. 32(a)(7)(C)and Circuit Rule 32-1 for C.A. No. 04-10100**

**(see next page)    Form Must Be Signed By Attorney or Unrepresented Litigant *And Attached to the Back of Each Copy of the Brief***

**I certify that: (check appropriate options(s))**

___1.  Pursuant to Fed.R.App. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening/answering/reply/cross-appeal brief is

☐    Proportionately spaced, has a typeface of 14 points or more and contains _____ words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words, reply briefs must not exceed 7,000 words),

**or is**

☒    Monospaced, has 10.5 or fewer characters per inch and contains __13,953__ words or_____ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words or 1,300 lines of text; reply briefs must not exceed 7,000 words or 650 lines of text).

___2.  The attached brief is **not** subject to the type-volume limitations of Fed.R.App.P. 32(a)(7)(B) because

☐    This brief complies with Fed.R.App.P. 32(a)(1)(7) and is a principal brief of no more than 30 pages or a reply brief of no more than 15 pages;

☐    This brief complies with a page or size-volume limitation established by separate court order dated _____ and is

☐    Proportionately spaced, has a typeface of 14 points or more and contains _____ words,
**or is**
☐    Monospaced, has 10.5 or fewer characters per inch and contains _____ pages or _____ words or _____ lines of text.

___3.  *Briefs in Capital Cases*

☐    This brief is being filed in a capital case pursuant to the type-volume limitations set forth at Circuit Rule 32-4 **and is**

☐    Proportionately spaced, has a typeface of 14 points or more and contains _____ words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 21,000 words; reply briefs must not exceed 9,800 words)

**or is**

☐    Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 75 pages or 1,950 lines of text; reply briefs must not exceed 35 pages or 910 lines of text).

___4. *Amicus Briefs*

☐   Pursuant to Fed.R.App.P. 29(d) and 9th Cir.R. 32-1, the attached amicus brief is proportionally spaced, has a typeface of 14 points or more and contains 7,000 words or less,

**or is**

☐   Monospaced, has 10.5 or fewer characters per inch and contains not more than either 7,000 words or 650 lines of text,

**or is**

☐   **Not** subject to the type-volume limitations because it is an amicus brief of no more than 15 pages and complies with Fed.R.App.P. 32(a)(1)(5).

3-11-05
_____
Date

_____
Signature of Attorney or
Unrepresented Litigant

## CERTIFICATE OF RELATED CASES

Counsel for the United States is not aware of any related cases.

Dated:   March _10_ , 2005, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By_____
LAWRENCE L. TONG
Assistant U.S. Attorney

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that two (2) true and correct copies of the foregoing document was duly served upon the following person by depositing said copies in the U.S. mail, first class, postage prepaid, as set forth below:

    RICHARD S. KAWANA, ESQ.
    4 South King Street, Suite 201
    Honolulu, HI 96813
        Attorney for Defendant-Appellant
        THOMAS A. SCHNEPPER

DATED: _____2-11-05_____, at Honolulu, Hawaii.